UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

SKY COUNTRY ESTATES, LLC,                                   Case No. 17-11617-tl7

    Debtor.

## **OPINION**

    Before the Court is creditor Sky Country Estates Property Owners Association, Inc.'s motion to dismiss the bankruptcy case under 11 U.S.C. § 305(a), arguing that it is a two-party dispute. In the alternative, movant argues that the Court should abstain from hearing the case under 28 U.S.C. § 1334(c)(2). The Debtor, its members, and the chapter 7 trustee oppose the motion. The Court, having reviewed the motion, the responses thereto, and the applicable law, finds that the motion is not well taken and should be denied.

    I.    FACTS

    For the limited purpose of ruling on the motion, the Court will assume the truth of the following facts:[1]

    Debtor is a New Mexico limited liability company, formed in January 1998. There are ten members. Debtor owned and developed a residential subdivision in Otero County, New Mexico, called Sky Country Estates. The subdivision, which is about seven miles west of Cloudcroft, New Mexico, has 67 lots, ranging from 2.5 acres to 27.875 acres.

    On May 5, 1997, Debtor signed a Disclosure Statement related to the subdivision. The statement included the following:

---

[1] The facts are taken from the dockets in the main bankruptcy case, this adversary proceeding, and the removed state court action. The facts will not bind the parties in subsequent proceedings. Unless otherwise indicated, however, there does not appear to be much dispute about them.

Water will be furnished by subdividers. Water system will meet all county and state regulations. Sky Country Property Owners Association will have power to regulate the water fees, repair and maintenance of water system. Initial water fees to be as follows: $60 per year if not hooked up to system, $200 per year if hooked up to system. Each lot owner shall be responsible for their own water system requirements from installed water line to their land or building site.

…

The installation of the water lines will run down the road easement in front of each lot. Each lot owner will be responsible for the installation of water to their building site from water line located in road easement. Maintenance and fees for water system will be responsibility of Sky Country Property Owner's Association. Water shall be provided to entire subdivision in three separate phases of development. Phase I shall consist of Lots 1 through 15; 50 through 53; 55 through 68 (totaling 33 lots). Phase II shall consist of Lots 16 through 39 and Lot 54. Phase III shall consist of Lots 40 through 49. Water well and storage tank locations for Phase II and III to be determined prior to marketing of said lots.

…

Initially water will not be metered. The water will be regulated by the Sky Country Property Owner's Association.

…

Well providing water for Phase I is located on Lot 68. Water is pumped to 25,000 gallon storage tank located on Lot 9 for distribution to all lots in Phase I. Water well and storage tank location for Phase II and III to be determined prior to marketing of said lots. Water delivery systems shall meet all state regulation requirements.

…

Water system extension shall meet all state regulation requirements.

…

Life expectancy of a properly drilled well would be more than fifty years. The life of any particular well cannot be accurately predicted.

…

See attached well report for well located on Lot 68. The formation is comprised of limestone, sandstone, siltstone, dolomite and shale in the upper part. Redbed, lomestone, gypsum, and dolomite in the lower part.

…

It is the opinion of the State Engineer that the subdivider's water proposal and disclosure statement conform with county subdivision regulations.

Between 1997 and 2006, Debtor sold all but four of the subdivision lots. By June 2014, eight of the lots had been developed with single-family houses and had full-time residents, while 14 other lots were occupied part-time.

Debtor built a water system to serve the subdivision. The system supplies water, but some

of the property owners allege that the amount supplied is inadequate. In addition, they allege that the water wells do not meets the recommended standards for public water systems.

Debtor attempted to increase the water supply by drilling 14 additional wells. 12 of those turned out to be dry holes.

On June 23, 2009, some of the lot owners formed Sky Country Estates Property Owners Association, a New Mexico nonprofit corporation (the "POA").

On November 8, 2012, the POA filed a complaint against Debtor and its members, styled *Sky Country Estates Property Owners Association, a New Mexico Non-Profit Unincorporated Association v. Sky Country Estates, LLC, et al.,* No. CV-2012-697 (the "Action").[2] The Action was filed in New Mexico's Twelfth Judicial District.

The POA's amended complaint asserted three counts: Count I (breach of contract), Count II (unjust enrichment), and Count III ("Fraudulent Disbursement of Funds from [Debtor] to [members]").[3] All three counts relate to the water supply dispute.

Defendants answered the amended complaint on July 25, 2014, and demanded a jury. In 2016, Defendants filed a motion to dismiss for lack of standing, as well as a motion for summary judgment. Later that year, Plaintiff filed a motion for partial summary judgment. All of these motions are still pending.[4]

A pre-trial conference was set for June 28, 2017. Debtor filed this bankruptcy case on June 23, 2017. On September 19, 2017, some of the members removed the Action to this Court. Plaintiff

---

[2] The POA described itself as an unincorporated association, which appears to be incorrect.
[3] It is not clear Count III states a cause of action. It does not allege the elements of a fraudulent transfer claim under state or federal law, nor the elements of a "veil-piercing" or "alter ago" claim. While the POA asks for a judgment against the members individually because of the alleged failure to complete the water system, it would not be entitled to such relief without pleading and proving some sort of veil-piercing claim.
[4] In early September 2017, the judge presiding over the Action was appointed as a U.S. Magistrate Judge for the District of New Mexico. The Action is now assigned to Hon. James W. Counts.

timely filed a motion for remand. The Court recently denied the motion.

While the remand motion was pending, the chapter 7 trustee appointed in the main case filed a brief asserting, inter alia, that the estate owns Count III.

The claims bar date has passed. The POA filed a claim for $2,589,400, allegedly the cost to fix the water system. John Wheeler filed a $13,448.10 claim for unpaid attorney fees. He represented Debtor pre-petition and continues to represent some of the members. Finally, six members filed proofs of claim for loans to the Debtor, indemnification, and "appropriate distribution of assets upon dissolution."

The bankruptcy estate owns four vacant lots, the subdivision's water system, $3,110.17 in a bank account, and (possibly) Count III.

## II. DISCUSSION

A. <u>Dismissal under 11 U.S.C. § 305(a)</u>.

POA argues that the case should be dismissed under § 305(a) because it is a two-party dispute. The section provides:

> (a) The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if--
>   (1) the interests of creditors and the debtor would be better served by such dismissal or suspension; or
>   (2)(A) a petition under section 1515 for recognition of a foreign proceeding has been granted; and
>     (B) the purposes of chapter 15 of this title would be best served by such dismissal or suspension.
>
> . . .
>
> (c) An order under subsection (a) of this section dismissing a case or suspending all proceedings in a case, or a decision not so to dismiss or suspend, is not reviewable by appeal or otherwise by the court of appeals under section 158(d), 1291, or 1292 of title 28 or by the Supreme Court of the United States under section 1254 of title 28.

1. § 305(a) Dismissal is an unusual remedy. Abstention or suspension under § 305(a)(1) is an unusual remedy. *See In re StatePark Building Group, Ltd.*, 316 B.R. 466, 476 (Bankr. N.D. Tex. 2004) ("Abstention or dismissal under § 305 is an extraordinary remedy and should only be exercised when the court finds that the interests of both the debtors and the creditors would be better served by abstention."); *In re Starlite Houseboats, Inc.*, 426 B.R. 375, 388 (Bankr. D. Kan. 2010) ("rare circumstance where [§ 305(a)] dismissal is appropriate); *In re 82 Milbar Boulevard, Inc.*, 91 B.R. 213, 216 (Bankr. E.D.N.Y. 1988) (§ 305(a) should be used sparingly and not as substitute for § 707(a));[5] *In re Aerovias Nacionales de Colombia S.A. Avianco,* 303 B.R. 1, 9 (Bankr. S.D.N.Y. 2003) (§ 305(a) dismissal or suspension is "extraordinary relief").

2. Burden of proof. The burden of proof for a § 305 motion is on the movant. *In re Forest Hill Funeral Home & Memorial Park-East, LLC*, 364 B.R. 808, 819 (Bankr. E.D. Okla. 2007), citing *In re Taylor Agency, Inc.*, 281 B.R. 354, 359 (Bankr. S.D. Ala. 2001).

3. Each case decided on its own facts. Each case must be decided by its own facts. *See In re Iowa Trust*, 135 B.R. 615, 622-23 (Bankr. N.D. Iowa 1992) ("although [various] tests are useful in determining whether dismissal under § 305(a) is appropriate, courts must look to the factors of the individual cases"), quoting *In re Trina Assoc.*, 128 B.R. 858, 867 (Bankr. E.D.N.Y. 1991).

4. Dismissal must benefit both creditors and debtor. Section 305(a) allows dismissal if "the interests of creditors and the debtor would be better served by such dismissal or suspension." Section 305 "is reserved for those rare occasions when both creditors generally and the debtor are

---

[5] The POA does not seek dismissal under § 707(a). The analysis of a § 707(a) motion is entirely different than a § 305(a) motion. For a general discussion of what courts consider when ruling on § 707(a) dismissal motions, *see In re Mcguire-Pike,* 2015 WL 4181019, at *4 (Bankr. D.N.M) (listing 16 factors), and *In re Herrera,* 554 B.R. 262, 266 (Bankr. D.N.M. 2016) (considering other factors).

better served by dismissal or suspension." 2 Collier on Bankruptcy ¶ 305.01 (16th ed.).

"If dismissal or suspension is not in the interest of the debtor, relief under section 305(a)(1) is inappropriate." *See* 2 Collier on Bankruptcy ¶ 305.02 (16th ed.). In *Eastman v. Eastman (In re Eastman)*, 188 B.R. 621, 624-25 (9th Cir. BAP 1995), the Bankruptcy Appellate Panel reversed the bankruptcy court's § 305(a) dismissal of a bankruptcy case because it did not make a finding that dismissal was in the debtor's best interest. In so ruling, the BAP stated:

> As the statutory language and legislative history demonstrate, the test under § 305(a) is not whether dismissal would give rise to a substantial prejudice to the debtor. Nor is the test whether a balancing process favors dismissal. Rather, the test is whether both the debtor and the creditors would be "better served" by a dismissal.

188 B.R. at 625. The discussion in *In re Spade*, 258 B.R. 221 (Bankr. D. Colo.), *aff'd*, 269 B.R. 225 (D. Colo. 2001), is helpful:

> The language enacted by Congress in § 305 is rather simple . . . . It is true that certain elements of this provision are not specifically defined. For example, the provision offers no guidance as to what "interests of the creditors and the debtor" might include, nor does it specify the situations in which these interests would be "better served" by dismissal or suspension. Nevertheless, the rules of statutory construction prohibit a court from abandoning the plain language of § 305 unless it makes a determination that the statute is ambiguous. *See id.* Words or phrases that are not specifically defined in a statute are not ambiguous *per se*. Congress routinely drafts provisions with broad language as a means of delegating discretion to those obligated to act under the provision.

258 B.R. at 225.

     5.    <u>Factors to consider</u>. Courts have come up with myriad factors to consider when ruling on a § 305(a)(1) motion. Here are some:

     a.    The motivation of the parties;
     b.    Whether the bankruptcy court of the state court can better serve the interests of the creditors;
     c.    The detriment of the bankruptcy proceeding to the debtor;
     d.    Economy and efficiency of administration;
     e.    Whether another forum is available to protect the interests of both parties or there is already a pending proceeding in state court;

    f. Whether federal proceedings are necessary to reach a just and equitable solution;
    g. Whether there is an alternative means of achieving an equitable distribution of assets;
    h. Whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case;
    i. Whether a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time-consuming to start afresh with the federal bankruptcy process;
    j. The purpose for which bankruptcy jurisdiction is sought;
    k. Fairness;
    l. Priorities in distribution;
    m. Capacity for dealing with frauds and preferences;
    n. Speed;
    o. Economy;
    p. Freedom from litigation;
    q. Important of a discharge to the debtor; and
    r. Complexity of the bankruptcy process

*In re Tarletz,* 27 B.R. 787 (Bankr. D. Colo. 1983); *In re Birchall*, 381 B.R. 13, 18 (Bankr. D. Mass. 2008); *In re ABQ-MCB Joint Venture*, 153 B.R. 338, 341 (Bankr. D.N.M. 1993). This list is not exhaustive. As the court said in *Packard Square, LLC v.Can IV Packard Square LLC (In re Packard Square, LLC),* 2018 WL 2159791 (E.D. Mich.):

> Although these factors can be useful in providing guidance in a given case, "in determining whether dismissal under § 305(a) is appropriate, courts must look to the factors of the individual cases...[and should] be guided by the unique facts of [the] case and look to only the factors or criteria particularly relevant and applicable" in the case under consideration. *In re Iowa Trust*, 135 B.R. 615, 622 (Bankr. N.D. Iowa 1992) (internal quotation marks and citation omitted).
> …
>
> The Court weighs the cited factors as follows:

| Factor | Discussion |
| --- | --- |
| a. The motivation of the parties. | Neutral. The POA understandably prefers state court. The Debtor and the members prefer bankruptcy court. For all parties, self-interest is a prime motivating factor, but no one has an improper motive. |
| b. Whether the bankruptcy court or the state court can better | Does not favor abstention. Creditors seek a relatively speedy and just adjudication of all disputes, so the bankruptcy court should be the better choice. |

| | |
|---|---|
| serve the interests of the creditors. | |
| c. The detriment of the bankruptcy proceeding to the debtor. | Does not favor abstention. The debtor prefers bankruptcy court. This is a key factor, given the language of § 305(a). |
| d. Economy and efficiency of administration. | Does not favor abstention. This Court could rule on the objection to the POA's claim and try any claims against the members within the next six months or so. It seems that the most efficient way to resolve the disputes between the parties would be to deny the motion to dismiss. |
| e. Whether another forum is available to protect the interests of both parties or there is already a pending proceeding in state court. | Does not favor abstention. The claims against the members are likely estate property, controlled by the trustee. He would prefer to have them determined in bankruptcy court. There is no pending state court action, although there would be one if court abstained from the main case and the adversary proceeding. |
| f. Whether federal proceedings are necessary to reach a just and equitable solution. | Favors abstention. The state court could reach a just and equitable solution for all parties. |
| g. Whether there is an alternative means of achieving an equitable distribution of assets. | Does not favor abstention. The claims will have to be tried somewhere unless a settlement is reached. |
| h. Whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case. | Does not favor abstention. No such settlement has been reached since the state court action was filed in 2012. |
| i. Whether a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time-consuming to start afresh with the federal bankruptcy process. | Does not favor abstention. This factor seems to apply when a state court receivership action was pending when the bankruptcy case was filed. There is no receivership action here. |
| j. The purpose for which bankruptcy jurisdiction is sought. | Does not favor abstention. Debtor seeks to avoid incurring additional attorney fees. The members seek timely and efficient resolution of the claims against them. These are legitimate goals. |
| k. Fairness. | Does not favor abstention. The Court has no reason to think the parties cannot get a fair result in state court or bankruptcy court. |
| l. Priorities in distribution. | Does not apply. |

| | |
|---|---|
| m. Capacity for dealing with frauds and preferences. | Does not favor abstention. If there is a viable cause of action against the members for fraudulent conveyance, it can be properly plead and pursued in bankruptcy court. |
| n. Speed. | Does not favor abstention. The pending disputes should be resolved more quickly in bankruptcy court. |
| o. Economy. | Does not favor abstention. It should be cheaper to resolved disputes in bankruptcy court, especially given the lack of a jury trial. |
| p. Freedom from litigation. | Does not favor abstention. Now that a trustee has been appointed, the debtor should be free from further litigation. |
| q. Importance of a discharge to the debtor. | Favors abstention. The Debtor is not seeking a discharge. |
| r. Complexity of the bankruptcy process. | Does not favor abstention. The bankruptcy should not be particularly complicated. |

Overall, the factors weigh against a § 305(a) abstention. In particular, consideration of the factors makes clear that abstention is not in the interests of the Debtor.

6. <u>Two party dispute</u>. The POA's motion is based primarily on its allegation that this case is a "two-party dispute." It argues:

> Under 11 U.S.C. § 305(a) a Bankruptcy Court has the authority to dismiss or suspend all proceedings in a Chapter 7 case in the case of a "two-party" dispute. A "two party" bankruptcy is a situation where a debtor owes only one debt to a single party where the creditor has adequate state law remedies, and debtor has no significant assets for the bankruptcy court to administer.

Motion, p. 4. The POA then cites eight cases in support of its "two-party dispute" argument. These cases, however, did not address § 305(a), but instead either granted dismissal under § 1112(b) or stay relief under § 362(d). *See In re Ravick Corp.,* 106 B.R. 834, 835 (Bankr. D.N.J. 1989) (§ 1112(b)); *In re Stulley,* 108 B.R. 174, 179 (Bankr. S.D. Ohio 1989) (§ 1112(b)); *In re Walter,* 108 B.R. 244, 248 (Bankr. C.D. Cal. 1989) (§ 1112(b)); *In re Colonial Manor Associates, Ltd.,* 103 B.R. 315 (Bankr. M.D. Fla. 1989) (§ 362(d)); *In re HBA East, Inc.*, 87 B.R. 248, 260 (Bankr. E.D.N.Y. 1988) (§ 1112(b)); *In re Van Owen Car Wash, Inc.,* 82 B.R. 671, 674 (Bankr. C.D. Cal. 1988) (§ 1112(b)); *In re Anderson Oaks (Phase 1) Ltd. Partnership,* 77 B.R. 108, 112 (Bankr.

W.D. Tex. 1987) (§ 362(d)); *North Central Devel. Co. v. Landmark Capital Co. (In re Landmark Capital Co.)*, 27 B.R. 273, 282 (Bankr. D. Ariz. 1983) (§ 1112(b)); *In re Club Tower L.P.,* 138 B.R. 307, 309 (Bankr. N.D. Ga. 1991) (§ 1112(b)).

The POA cites *In re Club Tower, L.P.,* 138 B.R. 307, 309-10 (Bankr. N.D. Ga. 1991), for some of the factors this Court should consider. *Club Tower* dealt with an alleged "bad faith" filing, however, and did not address § 305(a).

There is one type of "two-party dispute" case that bankruptcy courts often abstain/dismiss under § 305(a): involuntary chapter 7 cases filed by aggressive creditors. *See, e.g., In re Spade,* 258 B.R. 221, 229 (Bankr. D. Colo 2001); *In re Tarletz,* 27 B.R. 787 (Bankr. D. Colo. 1983); *In re Kujawa,* 224 B.R. 104, 107 (E.D. Mo. 1998); *In re ELRS Loss Mitigation, LLC,* 325 B.R. 604, 634 (Bankr. N.D. Okla. 2005) ("it is well established that the use of an involuntary bankruptcy filing is an improper method of resolving a two-party dispute"); *In re Rookery Bay, Ltd.,* 190 B.R. 949 (Bankr. M.D. Fla. 1995). *See generally* Collier on Bankruptcy ¶ 305.02[2][d] (16th ed.).

A court recently pointed out that § 305(a) does not require dismissal even if a case is a two-party dispute. *See In re Neighbors*, 2016 WL 6837146, at *5 (Bankr. D. Kan. Nov. 17, 2016). This Court agrees. The question is not whether there is a two-party dispute, but whether dismissal would "better serve" the interests of creditors and the debtor.

In any event, this case is not a two-party dispute. The real parties in interest in this bankruptcy case are the POA, the Debtor, the chapter 7 trustee, Mr. Wheeler, and the members. Furthermore, the Debtor argues that the individual lot owners are real parties in interest, rather than the POA. If so, there may be 60 or more parties in interest in this case.

B.  <u>28 U.S.C. § 1334(c)(2)</u>.

The POA also asks the Court to abstain from hearing the case under 28 U.S.C. § 1334(c)(2),

which provides:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

This request is without merit, because § 1334(c)(2) only applies to adversary proceedings, not to bankruptcy cases. *See, e.g., In re S.E. Hornsby & Sons Sand and Gravel Co., Inc.,* 45 B.R. 988, 996 (Bankr. M.D. La. 1985) ("the Court is not required to abstain under 28 U.S.C. § 1334(c)(2) since that section does not apply to a case under Title 11).

### III. CONCLUSION

This case in not a two-party dispute. The debtor would not be better served by abstention, nor would the non-POA creditors. Finally, 28 U.S.C. § 1334(c)(2) does not apply to bankruptcy cases, only to adversary proceedings. For these reasons, the POA's motion to dismiss will be denied. A separate order will be entered.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: August 13, 2018

Copies to: counsel of record

-11-
Case 17-11617-t7   Doc 47   Filed 08/13/18   Entered 08/13/18 17:17:21 Page 11 of 11